The People ex rel. Henry C. Southwick *v.* Wheeler H. Bristol, Treasurer of the State of New York.

(General Term, Third District, May, 1869.)

The auditor of the canal department is not authorized by law to direct in his warrant, drawn upon the treasurer, the particular bank having on deposit money belonging to the canal fund, upon which the check in payment of the warrant shall be drawn by the treasurer.

The treasurer of the State has the custody and control of the canal fund, subject only to such power over the same as is by law vested in the commissioners of the canal fund, and has, therefore, the right to determine from which depository the money shall be drawn to satisfy any such warrant. Per Ingalls, J.

And it seems that the authority of the commissioners to direct the treasurer in this particular may be more satisfactorily inferred from the general powers conferred by law upon them, than such authority in the auditor can be inferred from the nature of his office, and the duties which by law devolve upon him.   (Id.)

The commissioners of the canal fund having passed a resolution that the treasurer might, in his discretion, draw the check in payment of any warrant drawn by the auditor, upon any bank in the city of Albany having on deposit money applicable to the payment of the claim; and the auditor having drawn a warrant in favor of the relator, directing the treasurer to pay by check on the Mechanics' and Farmers' Bank, and the treasurer having drawn the check in payment of the warrant on the Merchants' National Bank, the auditor refused to countersign .the same because it was not drawn on the bank specified in the warrant,—*Held*, on appeal from an order at Special Term, directing a mandamus to issue requiring the treasurer to draw the check as required by the warrant, that the treasurer, and not the auditor, had the right to select the bank on which the check should be drawn, and that the order appealed from should be reversed.

APPEAL from an order of the Special Term awarding a peremptory mandamus against the defendant, as treasurer of the State of New York, requiring him, forthwith, to draw his checks in favor of the relator in accordance with, and upon the banks designated in, the several warrants of James A. Bell, auditor of the canal department of the State of New York. Four several warrants, two of them dated in May, one in June, and the other in July, 1868, were issued by the said James A. Bell, auditor of the canal department, directing the treasurer to pay by check, drawn on the Mechanics' and Farmers' Bank of the city of Albany, to Henry C. Southwick, Jr., the sums of money in the said warrants specified, out of canal funds in the treasury, for the services of said Southwick. Upon the presentation of the warrants to the defendant, he drew and tendered checks, drawn upon the Merchants' National Bank of Albany, for the amounts required by the said warrants. The auditor refused to countersign such checks on the ground that they were not drawn upon the bank designated in said warrants, claiming the right to specify the bank from which the funds should be so drawn. The treasurer refused to comply with the requirement of the

auditor in that particular, claiming that as such treasurer he had the right to designate the bank from which the money should be drawn to pay the sums required by said warrants The checks, to be valid, required to be countersigned by the auditor, and that being refused, the relator could not procure compensation for his services, and he applied at Special Term and procured an order directing a mandamus to issue requiring the treasurer to draw his checks as required by said warrants. From such order this appeal was taken.

*W. F. Allen* and *M. B. Champlain*, attorney-general, for the appellant.

*John H. Reynolds*, for the respondent.

Present—MILLER, INGALLS, and PECKHAM, JJ.

By the Court — INGALLS, J.   A conflict has arisen between the auditor of the canal department and the treasurer of the State, as to which is by law authorized to designate the bank from which money belonging to the canal fund shall be drawn to pay claims upon such fund. This is the only question involved in this appeal.   I have examined with care the elaborate opinion delivered at Special Term, in connection with the various statutes which have been passed from time to time by the legislature touching this question, and, while I entertain the greatest respect for the opinion of the learned judge who decided this motion at Special Term, I am compelled to differ with him in the conclusion to which he arrived, and will state the reasons therefor.   The treasurer is a constitutional officer of the State.   Article 5, section 1 of the constitution provides for the election of that officer.   Section 6 of the same article prescribes, in regard to the powers and duties of the treasurer, as follows: " The powers and duties of the respective boards, and of the several officers in this article mentioned, shall be such as now are or hereafter may be prescribed by law."

The Revised Statutes, volume 1, page 177 (Edmonds' edi-

tion), provides as follows: "§ 1. The treasurer shall receive all moneys which shall from time to time be *paid into the treasury of the State.*" The treasurer is required by statute to give a bond, with not less than four sufficient sureties, in the sum of $50,000 for the faithful execution of the duties of the office. Statutes have been passed from time to time by the legislature, providing for the care and custody of the funds of the State, arising from various sources, and either in terms directing the money paid directly into the treasury of the State, or subjecting the same to the control of the treasurer. The following are some of these statutes: Laws 1826, chapter 314; Laws 1841, chapter 238; Laws 1842, chapter 114; Laws 1844, chapter 314; Laws 1861, chapter 177. The statute of 1817, chapter 262, which provided for the creation of the canal fund in section 6, provides as follows: "And further, that the said superintendent, instead of a yearly report to the legislature, shall make a quarter yearly report to the commissioners of the canal fund, and pay into the *treasury* of this State, on the first Tuesday of February, May, August and November, in each year, all the moneys collected by him during the quarter preceding each of those days, etc." Thus bringing such fund directly under the control of the treasurer of the State, which officer was by the same statute designated as one of the commissioners of the canal fund. The legislature has, in several instances, directed the deposit of certain funds of the State in banks, having reference as well to the convenience of depositors as the security of such funds. The Revised Statutes, volume 1, page 178 (Edmonds' edition): "§ 7. The treasurer shall deposit all moneys that shall come to his hands on account of this State (except such as shall belong to the canal fund), within three days after receiving the same, in such bank or banks in the city of Albany as in the opinion of the comptroller and treasurer shall be secure and pay the highest rate of interest to the State for such deposit." Also in regard to the money belonging to the canal fund. Statute 1817, chapter 262, before referred to: "§ 9. The said collectors shall deposit the moneys received by them for tolls to the

The People v. Bristol.

*credit of the treasurer of this State*, at least once in two weeks, in such of the banks as may from time to time be *designated by the canal board, as near to the collectors as may be convenient.*" This provision of the statute was, in part at least, for the convenience of depositors; at the same time recognizing the authority of the treasurer as the officer entitled to the custody and control of such fund. Laws 1826, chapter 314, section 9, provides as follows: " The said collectors shall deposit the moneys received by them for tolls, to the *credit of the treasurer of the State*, at least once in two weeks, in such of the banks as may from time to time be designated by the canal board, as near to the collectors as may be convenient." In 1831 the legislature passed another statute in regard to the moneys belonging to the canal fund. Laws 1831, chapter 286: " § 1. The commissioners of the canal fund may deposit the moneys belonging to said fund with any safe incorporated moneyed institutions in this State, and may make such contracts with such institutions, for the interest on and duration of such deposits, as shall be most promotive of the interest of said fund." While this statute conferred upon the commissioners of the canal fund the authority to contract for the deposit of the moneys belonging to that fund, it did not, in terms, at least, direct in what name such deposit should be made, nor by whom it should be drawn. In 1848 the statute was passed which created the office of auditor. Laws 1848, chapter 162, and the 1st and 2d sections of that act, define the power and duties of that officer as follows: " § 1. There shall be an auditor of the canal department, who shall be appointed in the same manner and receive the same compensation as is now provided by law in relation to the chief clerk of the canal department, and the said office of chief clerk of the canal department is hereby abolished. § 2. All the powers and duties of the chief clerk of the canal department and all the powers and duties of the comptroller in relation to the canals (except his powers and duties as commissioner of the canal fund) are hereby transferred to and vested in

the said auditor ; and the said auditor shall also be secretary of the commissioners of the canal fund, and of the canal board." Subsequent sections of said statute provide that the auditor shall have the care of the books and records, and be authorized to employ clerks, &c. By this statute there is conferred upon the auditor all the powers and duties of the chief clerk of the canal department, in relation to the canal fund, except his powers and duties as commissioner of the canal fund. The office of chief clerk was created by the statute of 1840 (see Laws, 1840, chapter 288). The 12th section of that statute provides : " The chief clerk shall also be clerk of the canal board, and shall receive the compensation, possess all the powers, and perform all the duties of the *second deputy comptroller*, as now provided by law ; and the said office of second deputy comptroller is hereby abolished." The office of second deputy comptroller was created by the statute 1833 (Laws 1833, chapter 56), and his duties are defined as follows : " § 2. The deputy to be appointed pursuant to this act may perform any of the duties of the comptroller in relation to the canals, except as a commissioner of the canal fund. § 3. Such deputy shall be the clerk of the commissioners of the canal fund, and of the canal board." We perceive the auditor is not created a commissioner of the canal fund, but is expressly excluded from discharging the duties of the comptroller as such commissioner. I do not understand that the auditor was clothed with any additional powers by the statute of 1857 (Laws 1857, chapter 783), which affects this question.

From an examination of the statutes in regard to the powers and duties of the comptroller, (other than those which he performs as commissioner of the canal fund), and the powers and duties which were conferred by statute upon the chief clerk of the canal department ; and upon the second deputy comptroller ; and of all the statutes to which my attention has been directed, I fail to discover any statute which authorizes the auditor to direct by his warrant the bank from which the moneys of the State, belong-

ing to the canal fund, shall be drawn upon the check of the treasurer. Nor do I perceive anything in the nature of his office, or the duties incident thereto, from which such authority can be implied. It is obvious, from the provisions of the statute of 1848, which created the office of auditor, that the legislature did not intend thereby to place the canal fund beyond the control of the treasurer. Section 8 of that statute provides as follows: "§ 8. Dues of the State which have heretofore been paid to the commissioners of the canal fund shall, on and after the 1st day of October next, be *paid into the State treasury.* § 9. All balances standing to the credit of the commissioners of the canal fund on the 1st day of October next, in any depository, shall as of that date be transferred by the said commissioners to the *credit of the treasurer of the State.*" There is no provision of that statute which directly in terms, or by fair implication, confers upon the auditor the authority which he claims to exercise. The 11th section of that statute contains the direction in regard to drawing money from the canal fund, and is as follows: "All moneys now authorized by law to be paid or advanced by the commissioners of the canal fund, and all moneys which shall hereafter be authorized to be paid or advanced from the canal fund, shall, on and after the 1st day of October next, be paid *by the treasurer,* on the warrant of the auditor; but no warrant shall be drawn unless authorized by law, and every warrant shall refer to the law under which it is drawn." There is nothing in said section which even intimates that the auditor should indicate in his warrant the bank from which the money shall be drawn. Considering the nature of the office of treasurer, and the duties imposed by law, and the various statutes to which we have referred, I am convinced that the treasurer has the custody and control of the fund in question, subject only to such power over the same as is by law vested in the commissioners of the canal fund (which will be considered hereafter), and that the treasurer has therefore the right to determine from what bank, having on deposit such fund, money shall be drawn to satisfy any amount

required by the warrant of the auditor. It is unnecessary to determine which officer is superior in rank; all that we desire to ascertain is, which is authorized to perform the particular duty in question; and beyond that we do not desire to inquire or speculate, or to endeavor to settle any question of etiquette. The fact that the moneys of the State are applicable to a variety of objects, and constitute separate funds, does not, in my judgment, militate against the views above expressed, as that consideration only affects the manner in which the accounts are to be kept, the money deposited, and the purposes to which the same is applied. The defendant further insists that the right which he claims to exercise has the support of the action of the commissioners of the canal fund. Article 5, section 5, of the constitution of the State, provides: "The lieutenant-governor, secretary of State, comptroller, treasurer, and attorney-general shall be the commissioners of the canal fund." Section 6 of same article provides, in regard to the powers and duties of such board, as follows: "The powers and duties of the respective boards, and of the several officers in this article mentioned, shall be such as were, are, and hereafter may be prescribed by law." The Revised Statutes, volume 1, page 193, section 4 (Edmonds' edition), provides as follows: "The canal fund shall continue to be superintended and managed by the commissioners of the canal fund," etc. Section 5 provides: "It shall be the duty of the commissioners of the canal fund to manage, to the best advantage, all things belonging to that fund." The 10th section of the statute of 1858, above referred to, provides: "Whenever directed by the commissioners of the canal fund, the treasurer shall transfer from one depository to another, by a draft to be countersigned and entered by said auditor, any canal fund moneys standing to his credit; and no such moneys shall be transferred by the treasurer from one depository to another unless by such direction." We have already referred to several other statutes relating to the power conferred upon the commissioners of the canal fund to direct in regard to the depositing of moneys belonging to that fund; and we are

inclined to the opinion that authority to direct the treasurer by the commissioners of the canal fund, as to which bank moneys shall be drawn from to satisfy claims against such fund, may be more satisfactorily implied from the general powers conferred by law upon such commissioners of the canal fund, than such authority in the auditor can be implied from the nature of the office of auditor and the duties which by law are devolved upon that officer.

It appears that at a meeting of the commissioners of the canal fund, held October 10th, 1862, the following resolution was adopted:

*Resolved,* That the form of the warrants upon the treasurer used by the auditor designating the canal deposit banks on which the treasurer shall draw his checks in payment of claims payable out of the canal fund, and which have been in use since the 1st day of October, 1848, be and the same is hereby approved by this board.

At a meeting of the commissioners of the canal fund, held April 16th, 1868, the following resolution was adopted:

*Resolved,* That the resolution adopted October 10, 1862, authorizing the auditor to select the banks from which money shall be drawn in payment of dues from the canal fund, be and is hereby rescinded.

At a meeting of the commissioners of the canal fund, held April 28, 1868, the following resolutions were adopted:

"*Resolved,* That moneys payable into the treasury belonging to the canal fund shall be paid to the treasurer, who shall give a proper receipt therefor, which receipt shall be countersigned by the auditor of the canal department, who shall also keep the proper accounts of such moneys in books to be kept by him in the canal department.

The treasurer shall deposit all such moneys received by him in one of the banks in the city of Albany, designated by the commissioners of the canal fund for the deposit of moneys belonging to the canal fund, and procure an entry of said deposit to be made by the bank officers in a pass-book to be kept by him. Each of said banks of deposit shall also furnish

a duplicate pass-book for the auditor, and cause all deposits of moneys belonging to the canal fund to be entered therein.

It shall be the duty of the said auditor on the first Tuesday of each month, or as soon thereafter as practicable, to examine the debts and credits in the bank books kept by the treasurer, and if he discovers any irregularity or deficiency therein he shall, unless the same be rectified or explained, report the same, in writing, to the commissioners of the canal fund.

The auditor of the canal department shall not designate in his warrants drawn upon the treasurer, or otherwise, the bank or banks upon which the treasurer shall draw his checks in payment of such warrants. But the treasurer in payment of any warrant drawn by the auditor shall be at liberty to draw his check upon any of the banks of the city of Albany having money on deposit to the credit of the treasurer belonging to the canal fund, and applicable to the payment of the claim, and the said auditor shall countersign the said checks so drawn, and enter the same as required by law.

The acts of the treasurer in drawing checks in payment of warrants drawn upon him by the auditor upon banks other than those specified in the warrants are ratified and approved, and the auditor is directed to countersign and enter the said checks as required by law."

Thus it appears that as early as 1862 the question must have arisen in regard to the authority of the auditor to designate by his warrant the bank from which moneys should be drawn to pay claims upon the canal fund ; for it was then at least deemed prudent, if not actually necessary, to procure the direction of the commissioners of the canal fund in relation thereto, and from that period until April 16, 1868, the form of warrant used by the auditor was sanctioned by the said commissioners. By the subsequent action of the said commissioners of the canal fund, that sanction was withdrawn and the auditor expressly directed *not to designate* in his warrant the bank upon which the treasurer should be required to draw his check, but that the treasurer should be at liberty to draw his check upon any of the banks in the city of Albany

having money on deposit to the credit of the treasurer, belonging to the canal fund. The treasurer, therefore, in the course which he has pursued in this particular, has acted not only upon the authority which he possesses as treasurer, but also in accordance with the express direction of the commissioners of the canal fund, as expressed in the resolutions adopted by that body. It is very clear to my mind, as a question of strict right, and in that respect this matter must be considered, the treasurer is authorized to direct from which bank holding such deposits money shall be drawn to pay the sums required by the warrant of the auditor. We do not feel at liberty to allow considerations of expediency or convenience to control in the disposition of this question. If the treasurer possesses the authority he should exercise it, because the law confers it upon him, and order and harmony generally follow a proper observance of the law. I am unable to perceive why any inconvenience should result from the exercise by the treasurer of this right which he seems to possess. I am, therefore, of opinion that the order of the Special Term should be reversed with costs.

Order reversed.*

* This decision was affirmed by the Court of Appeals, at the March Term, 1870.